

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-86,920-02

### IN RE STATE OF TEXAS EX REL. BRIAN W. WICE, Relator

### v.

### THE FIFTH JUDICIAL DISTRICT COURT OF APPEALS,
### Respondent

### ON APPLICATION FOR A WRIT OF MANDAMUS
### CAUSE NOS. 05-17-00634-CV, 05-17-00635-CV, & 05-17-00636-CV
### TO THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

**RICHARDSON, J.,** filed a concurring opinion.

## CONCURRING OPINION

This case is not about the merits of the underlying indictments against Ken Paxton,

and it is not about the reasonableness or deservedness of attorneys fees.  This mandamus

proceeding is about vacating a trial court's void order because it failed to comply with the

plain and unambiguous terms of Article 26.05.  Article 26.05(a) plainly and unambiguously

states that an appointed counsel "shall be paid a reasonable attorney's fee" based on "the time

and labor required, the complexity of the case, and the experience and ability of the appointed counsel."[1] Article 26.05(b) plainly and unambiguously directs that all such compensation to an appointed counsel "shall be paid in accordance with a schedule of fees adopted by formal action of the judges of the county courts, statutory county courts, and district courts trying criminal cases in each county."[2] Article 26.05(c) further instructs that "[e]ach fee schedule adopted shall state reasonable fixed rates or minimum and maximum hourly rates, taking into consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates..."[3]

In accordance with Article 26.05(b), the judges of the district courts trying criminal cases in Collin County ("the judges") adopted Local Rule 4.01A, which created a "Fee Schedule for Appointed Attorneys." The Fee Schedule created by the judges, on its face, complied with Article 26.05(c), in that it stated "reasonable" fixed rates. Some of these fixed rates were per type of case, and some of the fixed rates were per hour. Although the judges had the option under Article 26.05(c) to also set "minimum and maximum hourly rates,"[4] the Fee Schedule they adopted did not do so. And, as the majority explains, therein lies the problem. Instead, the judges adopted Local Rule 4.01B, which provided that the judge

---

[1] TEX. CODE CRIM. PROC. art. 26.05(a).

[2] *Id*. at 26.05(b).

[3] *Id*. at 26.05(c).

[4] Although not relevant to the issue before the Court, the Fee Schedule has since been changed, effective February 3, 2017, to provide for minimum and maximum hourly rates in certain types of cases.

presiding over a case may authorize payment to appointed counsel that can vary from the Fee Schedule "in unusual circumstances."[5] This local rule had the effect of giving a single trial court judge unlimited flexibility in setting a fee in order to account for difficult and/or high profile cases requiring uniquely qualified and experienced attorneys.

In this case, Relator and two other attorneys were appointed to serve as attorneys pro tem in the matters of *State of Texas v. Warren Kenneth Paxton*, *Jr.*, Case Nos. 416-81913-2015, 416-82148-2015, and 416-82149-2015, in the 416th Judicial District Court of Collin County ("the Paxton cases"). In April of 2015, under the authority of Local Rule 4.01B, the Collin County Local Administrative Judge entered into an agreement to pay the attorneys pro tem $300 per hour for their work as special prosecutors in the Paxton cases. A Collin County District Judge presided over the grand jury proceedings, but at the end of July 2015, the presiding judge of the first administrative judicial region assigned a Tarrant County district court judge to preside over the Paxton cases, after the first judge recused himself.

After having worked on the cases for approximately eight months, in December of 2015, the attorneys pro tem submitted their first request for compensation. Under the authority of Local Rule 4.01B, and in accordance with what he understandably assumed was

---

[5] Effective January 22, 2016, Local Rule 4.01B was amended to specify that "[t]he judge presiding over a case may authorize payment to appointed counsel that varies from the fee schedule in unusual circumstances..." The local rule setting the Fee Schedule was also amended at the same time, adding a reference to this exception in Local Rule 4.01B—"counsel shall be paid according to the following fee schedule, without exception, except as provided for in Section 4.01B." Effective February 3, 2017, Local Rule 4.01B was completely removed and a new Local Rule 4.4 was promulgated which allows for "reasonable and necessary attorney's fees" for non-plea cases. Local Rule 4.4 specifies *no* fixed, minimum, or maximum amount of fees.

a valid agreement entered into between the Local Administrative Judge and the attorneys pro tem, the assigned judge issued an order for the Commissioners Court to pay to the attorneys pro tem their submitted invoice at the agreed-upon rate of $300 per hour.[6]  In January of 2016, the Commissioners Court voted and approved payment by the county of the amount requested by the attorneys pro tem.  As the majority points out, the Commissioners Court knowingly paid this first request for compensation at the $300 per hour rate, and this payment is not at issue at this time.

A second request for compensation was authorized by the assigned judge, again in accordance with the original compensation agreement and under the authority of Local Rule 4.01B.  However, the second request for payment was rejected by the Commissioners Court, and these proceedings ensued.

I agree with the majority and with the Fifth Court of Appeals that the judges who created the Fee Schedule and the local rules never had the statutory authority to promulgate Local Rule 4.01B.[7]  The plain language of Article 26.05(c) requires the schedule of fees that the judges adopt to "state reasonable fixed rates" or "minimum and maximum hourly rates."  This clearly and unambiguously means that the Fee Schedule must state specific dollar amounts.  The statute even acknowledges that the Fee Schedule must "tak[e] into

---

[6] It is not at all unusual nor surprising that the assigned judge would not have questioned the authority of the Local Administrative Judge (the judge who assigned him) to set the hourly rate of pay to the attorneys pro tem at $300 per hour.  That was no doubt perceived as an administrative detail that had been worked out long before he was assigned to the cases.

[7] *In re Collin Cnty*, 528 S.W.3d 807, 813-14, 815 (Tex. App.— Dallas 2017).

consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates." There is nothing in Article 26.05 that allows the local administrative judge or a district court judge presiding over a case to approve the payment of an attorney pro tem's hourly rate that does not fall within a specific dollar-amount-range provided for in the county's formally adopted Fee Schedule. In fact, Article 26.05(c) provides that if an attorney's request for payment is disapproved, he may appeal such disapproval to the presiding judge of the administrative judicial region. However, the presiding judge only has the authority to approve of such payment if it "is in accordance with the fee schedule for that county."[8] Thus, although Article 26.05(a) does mandate that the attorney pro tem be paid a "reasonable" fee, what constitutes "reasonable" has already been decided by the criminal court judges of the county and provided for in the county's published Fee Schedule. Any attorney accepting an appointment as an attorney pro tem is on notice that his or her compensation must be in accordance with the county's Fee Schedule. In this case, understandably misled by Local Rule 4.01B and by the Commissioners Court's prior approval of the first payment of fees, the attorneys pro tem continued to work on the Paxton cases, assuming that they would continue to be paid $300 per hour. However, unfortunately, they did so at their own peril.[9] The judges of Collin County did not have the authority to

---

[8] TEX. CODE CRIM. PROC. art. 26.05(c).

[9] Judge Keel's Dissent states that mandamus is precluded here because the Fee Schedule was defective for not providing for the payment of a "reasonable" fee, and it therefore did not comply with Article 26.05(a), which thus created a dilemma for the trial court because its duty was not a "clear duty." However, the trial court did have a clear duty—to pay the attorneys pro tem in accordance with the Fee Schedule. So long as a trial court complies with the Fee Schedule, it has discretion in

promulgate Local Rule 4.01B, which makes it a void rule. Because Local Rule 4.01B is void, the agreement to pay the attorneys pro tem $300 per hour in accordance with that rule is unenforceable, and the trial court's order to compensate the attorneys pro tem $300 per hour is therefore void.

That does not mean that counties are without the ability to find and pay skilled attorneys to serve as special prosecutors in complex or unusual cases. The terms of Article 26.05 allow for a Fee Schedule that could cover the need to pay "reasonable" fees based on the attorney's experience and the complexity of the case. Local Rule 4.01B went outside the clear parameters set in Article 26.05. Local Rule 4.01A (i.e., the Fee Schedule) could have been written so as to account for the need to pay "reasonable" fees within those parameters. While it is clear that the Local Administrative Judge and the assigned judge believed that they were acting under valid authority—Local Rule 4.01B—in authorizing and ordering the payment of $300-per-hour fees to the attorneys pro tem, they were not.

"[A]n agreement which violates a valid statute is illegal and void, and cannot be enforced."[10] And, because the assigned judge lacked the authority to authorize the payment of statutorily unauthorized fees, he had a ministerial duty to refrain from taking that action.

---

determining what constitutes a "reasonable fee" for an appointed attorney within the parameters of that Fee Schedule. *See* Tex. Gen. Op. JM-537, 1986 WL 219383 (August 22, 1986) (citing Tex. Gen. Op. H-909 (1976)). The trial court judge has a ministerial duty to pay appointed counsel in accordance with the Fee Schedule.

[10] *Woolsey v. Panhandle Ref. Co.*, 116 S.W.2d 675, 678 (Tex. 1938) (holding that employee's contract for settlement with employer was void and unenforceable because it was executed in violation of the Workmen's Compensation Law) ("[T]his court has repeatedly refused to enforce contracts which are either expressly or impliedly prohibited by statutes or by public policy.").

Although unintentionally set in motion, since the trial court took the action of ordering an unauthorized payment, it now has the ministerial duty to vacate that order.[11] I therefore agree with the majority that the holding of the Fifth Court of Appeals should be affirmed.

It is unfortunate that the attorneys pro tem have not been paid for their work in such cases in over two years. During that period, they have had to spend a considerable amount of time, energy, and money engaged in more than one battle over the payment of their fees they have incurred serving as attorneys pro tem in the Paxton cases. Since January of 2016, the attorneys pro tem have had to respond to four previous proceedings involving taxpayer-related claims brought by a private citizen in Collin County attempting to prevent payment to the special prosecutors.[12] Those attempts were unsuccessful. According to the briefs before the Court, the Commissioners Court has authorized payment of up to $375 an hour to private attorneys the Commissioners Court has engaged to fight paying the attorneys pro tem $300 an hour.[13]

---

[11] *State ex rel. Thomas v. Banner*, 724 S.W.2d 81, 83 (Tex. Crim. App. 1987) ("If he did not have the authority it was his ministerial duty to vacate the orders."). *In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015).

[12] *See In re Jeffory Blackard, Relator*, No. 05-16-00478-CV, No. 095-16-00479-CV, No. 05-16-00480-CV, 2016 WL 1756786 (Tex. App.— Dallas, April 29, 2016); *In re Jeffory Blackard, Relator*, No. 05-16-00470-CV, 2016 WL 1756786 (Tex. App.— Dallas, April 29, 2016); *Blackard v. Schaffer*, No. 05-16-00408-CV, 2017 WL 343597 (Tex. App.— Dallas, January 18, 2017) (This appeal not only required the involvement of the attorneys pro tem in their official capacities, the Collin County Judge in his official capacity, the individual commissioners in their official capacities, and the county auditor in his official capacity, this appeal also involved several additional attorneys representing the various parties.); *Blackard v. Schaffer*, No. 05-17-00094-CV, 2017 WL 2493279 (Tex. App.— Dallas, June 9, 2017).

[13] *See* Relator's Petition for Writ of Mandamus at 7 n.11.

Moreover, based on the briefs submitted, it appears that the Commissioners Court may seek to recoup what it already paid to the attorneys pro tem for their work on the Paxton cases,[14] despite voting to approve the first request for payment submitted by the attorneys pro tem. However, the Commissioners Court should not be entitled to recover what it has already paid to the attorneys pro tem. Under the Fee Schedule existing at the time, the judge may not have had statutory authority to order the Commissioners Court to pay the attorneys pro tem $300 per hour; however, the Commissioners Court certainly had the constitutional and statutory authority to pay it.[15] Counties need not be concerned that the Court's decision today precludes the commissioners's ability to pay an attorney pro tem any fee they deem reasonable. The Commissioners Court has the spending authority to pay an amount in excess of what is set out in the county's Fee Schedule, but it is not required to do so, which is what happened here. But, since the Commissioners Court may ratify that which it could have authorized originally,[16] the commissioners's first payment to the attorneys pro tem was a

---

[14] *See* Relator's Petition for Writ of Mandamus at 7 n.12, *In Re The State of Texas Ex Rel. Brian W. Wice, Relator*, Nos. 416-81913-2015; 416-82148-2015; 416-82149-2015 (Sept. 9, 2017) (citing Lauren McGaughy, *Collin County Wants Back the Money it Spent on AG Ken Paxton Prosecution*, DALLAS MORNING NEWS, Aug. 2017).

[15] *See* TEX. CONST. art. V § 18(b) (Commissioners Court may exercise powers and jurisdiction over all county business); TEX. LOC. GOV'T CODE ANN. § 111.010(b) (Commissioners Court may spend county funds if within the budget); *Guynes v. Galveston Cnty*, 861 S.W.2d 861, 863 (Tex. 1993) ("As the administrative head of county government, a commissioners court also possesses broad implied powers to accomplish its legitimate directives. . . . These powers include the authority to contract with experts when necessary, including attorneys.").

[16] *State v. Carnes*, 106 S.W.2d 397, 399 (Tex. App.— San Antonio 1937, no writ) (citing *Cameron Cnty v. Fox*, 61 S.W.2d 483 (Tex. Comm'n. App. 1933)). *See also Rodgers v. Cnty of Taylor*, 368 S.W.2d 794, 797 (Tex. App.— Eastland 1963, writ ref'd n.r.e.) (The district attorney, county judge, one commissioner, and the grand jury foreman hired a court reporter to transcribe some

valid payment of county funds. While the first payment by the Commissioners Court to the attorneys pro tem may not have prospectively bound the Commissioners Court to continue paying at the rate originally promised, the first payment by the Commissioners Court was a clear ratification of the agreement to pay that first amount requested for work already incurred. Therefore, the Commissioners Court should not be entitled to recoup the fees already paid.

Moreover, as discussed herein and as pointed out by the court of appeals, rather than provide for such untethered flexibility and unlimited discretion by any one trial court judge, the judges have the ability to comply with Article 26.05 by providing in their Local Rule 4.01A Fee Schedule specific amounts for minimum and maximum rates of pay that would account for extraordinary and unusually complex cases.[17] Such rates can include a maximum

testimony, and later the Commissioners Court ratified this expense. The county was liable because the Commissioners Court ratified the expense, holding that, "[w]hat the Commissioners Court could have authorized in the beginning, that court could subsequently ratify."); *Morrison v. Kohler*, 207 S.W.2d 951, 959 (Tex. App.— Beaumont 1947, writ ref'd n.r.e.) (Commissioners Court was "fully authorized to ratify and validate the contract and agreement. . . When the fact of the contract came to the knowledge of the commissioners' court, and they elected to hold the bonds or take any other benefit under them, or to carry out its provisions, they ratified it, and the county was estopped to deny its validity. . . . Under this authority it might be said that the payment to relators on August 8, 1946, of the advances for services rendered under the verbal agreement also constituted a ratification thereof.").

[17] I agree with the majority's discussion of the legislature's response to this Court's 1987 decision in *Smith v. Flack*, 728 S.W.2d 784 (Tex. Crim. App. 1987). When *Smith v. Flack* was decided, Article 26.05 provided for only a minimum rate of pay for appointed attorneys. Without a maximum cap in the Fee Schedule, district court judges had the authority to order fees in any amount excess of the minimum. Article 26.05 was amended after that case to provide for a minimum *and* a maximum rate allowed. Presumably, this was to prevent a single judge from abusing his or her discretion by paying special prosecutors exorbitant fees. That was clearly not the case here. In fact, as noted herein, it appears that the Commissioners Court may be paying more to fight the payment of Relator's fees than the actual fees themselves.

rate of $300 per hour or more.[18]  Article 26.05 does not mandate that all appointed attorneys work for the same compensation.  Rather, requiring a stated "minimum and maximum hourly rate" allows the judges of each county to anticipate unusual and complex cases and collectively, by formal action, authorize adequate compensation for competent counsel by setting a specific range of pay for appointed attorneys.[19]  There is nothing stopping the judges of each county from amending that county's Fee Schedule to account for the appointment of qualified lawyers for difficult cases.[20]  The Fee Schedule at issue in this case did not allow for a $300 per hour rate; but that Fee Schedule is not written in stone.  If the judges wish to amend the Fee Schedule, they can follow Article 26.05(c) and provide for "minimum and maximum hourly rates, taking into consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates."[21]  As the court

---

[18] The court of appeals aptly makes this point. *In re Collin Cnty*, 528 S.W.3d at 813 ("limiting the scope of the fees that may be paid to an appointed attorney does not eliminate the discretion of the individual trial judge, regardless of the simplicity or complexity of the case. . . . [E]ach judge has discretion within that range to set the fee in an individual case.").

[19] There are amicus briefs filed in support of granting relief to Relator, arguing that counties should have a right to pay the attorneys pro tem $300 per hour.  I agree, as long as the county judges set up a Fee Schedule that allows appointed attorneys to be paid such a rate that is within a range of minimum and maximum fees, consistent with Article 26.05.

[20] The court of appeals correctly noted that Article 26.05 "does not prevent the judges from taking into consideration the possibility of 'unusual circumstances' in setting the *range* of reasonable fees allowed. But the legislature intended each county to have an agreed framework that sets out the specific range of reasonable fees that could be paid." *In re Collin Cnty*, 528 S.W.3d at 812 (emphasis in original).

[21] TEX. CODE CRIM. PROC. art. 26.05(c). If the judges decide not to amend the current Fee Schedule, and if other judges in other counties do not heed this majority decision, I can see such counties having an extremely difficult time finding qualified attorneys to serve as special prosecutors in similarly high profile and unusually complicated cases. As noted by the majority, an elected district

of appeals observed, "limiting the scope of the fees that may be paid to an appointed attorney does not eliminate the discretion of the individual trial judge."[22]   Article 26.05 allows the judges to  adopt a range of hourly fees, but each individual judge has discretion to set a fee within that range that takes into account the complexity of the case and the need for a qualified special prosecutor. Article 26.05, as plainly and unambiguously written, makes perfect sense.  The creation of Local Rule 4.01B, unfortunately, was not permitted by the statute, which means the trial court's order of payment under the authority of Local Rule 4.01B is a void order.  Therefore, I agree that mandamus is the proper vehicle to undo that void order.

Nevertheless, the attorneys pro tem are entitled to be paid for the work they have done on the Paxton cases. They have put in a significant amount of time and effort—without compensation—working the cases they were appointed to prosecute, and they have submitted a request for payment.  The amount that they should be paid simply must be in compliance with a statutorily authorized Fee Schedule.  Therefore, I agree that the trial court must issue a new order for payment of fees in accordance with a Fee Schedule that complies with

---

attorney from another county could serve as a special prosecutor without collecting any additional compensation.  However, in a high profile, politically-charged case, the presiding judge would likely have a problem finding another district attorney from the same political party as the defendant who would take on the job of special prosecutor—I cannot fathom what incentive he or she would have to take on such a case.  On the flip side of that, the judge appointing the special prosecutor would likely be publicly criticized if he or she appoints a district attorney from the opposing political party as the defendant.

[22] *In re Collin Cnty*, 528 S.W.3d at 813.

Article 26.05(c).

With these comments, I concur and join the majority.

FILED:        November 21, 2018

PUBLISH